UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NANCY J. SWICK,

    Plaintiff,

        v.

UNITED STATES DEPARTMENT OF THE ARMY,

    Defendant.

Civil Action No. 18-1658 (JDB)

**MEMORANDUM OPINION**

Plaintiff Nancy Swick brought this action pro se under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, against defendant U.S. Department of the Army seeking records related to her employment at Fort Belvoir Community Hospital ("FBCH"). Now before the Court are the Army's motion for summary judgment and Swick's cross-motion for summary judgment. At issue is whether the Army's search for Swick's records was adequate. For the reasons explained below, the current record is neither sufficiently clear nor sufficiently detailed to warrant summary judgment for either side. As a result, both motions will be denied without prejudice. The Court will require the Army to provide further information as to the thoroughness and substance of its search before submitting any further dispositive motions.

**Background**

From 2011 to 2013, Nancy Swick served as an OB/GYN nurse practitioner at FBCH in Fort Belvoir, Virginia. See Ex. to Compl. [ECF No. 1-1] at 3, 24. Swick submitted a FOIA request to the Directorate of Human Resources, Administrative Services Division at FBCH in March 2017 seeking a copy of the report from a psychiatric evaluation she was apparently ordered to undergo

1

as part of her previous employment.  Id.  On March 20, 2017, the Administrative Services Division referred Swick's request to FBCH.  Id. at 5.

Swick submitted a second FOIA request directly to FBCH on June 1, 2017, in which she requested "any and all documents with [her] name, social security number, [and] date of birth" that were stored either in her personnel file or "that are being maintained/filed separately due to privacy laws and regulations."  Id. at 14–15, 20–21; see also Am. Compl. [ECF No. 12] ¶ 5 ("[P]laintiff asked for all documents in her employee personnel file on June 1, 2017, by written FOIA request.").  In her request, she also mentioned her prior FOIA request for her psychological examination report and noted that she had "received no [written] response or acknowledgement," but when she called, she had been told "that [her] request was known of, yet no action had been taken to satisfy the request."  Ex. to Compl. at 14.  FBCH eventually denied Swick's FOIA requests on July 25, 2017, citing FOIA Exemption (b)(6), which protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy," 5 U.S.C. § 552(b)(6).  See Ex. to Compl. at 22.

Swick subsequently sent a letter to FBCH challenging the invocation of Exemption (b)(6) "to withhold from a requestor information pertaining only to himself/herself."  Id. at 29–30.  On September 11, 2017, FBCH responded, informing Swick that "[t]he denial of [her] request citing to the authority of § 552(b)(6) was incorrect."  Id. at 27, 33.  FBCH nevertheless highlighted that there was a "more convenient process" for Swick to acquire her psychological evaluation: the Health Insurance Portability and Accountability Act ("HIPAA").  Id.  FBCH noted that "[r]equesting a copy of [her] protected health information through the FOIA process is unnecessary and will cause delays as both the records custodian and FOIA office must both review the requested protected health information."  Id.

On September 22, 2017, Swick submitted an administrative appeal of FBCH's decision to the Office of General Counsel, Defense Health Agency. See id. at 39, 57. She did not receive a response to this appeal, and on July 5, 2018, filed this lawsuit. See Am. Compl. ¶ 13. Then, on October 2, 2018, FBCH sent yet another letter to Swick, again informing her that the proper avenue to request her psychological evaluation records was via a HIPAA request. See Oct. 2, 2018 Letter from FBCH ("Oct. 2 Letter") [ECF No. 20-2] at 1. The letter explained that "[p]rotected health information, and any disclosures, is governed by HIPAA" and requires a "written record request, signed by [Swick] (the patient)," which is "necessary for maintaining a record of each disclosure, as required by law." Id. The letter also stated that "FBCH does not possess [Swick's] personnel records/documents" and that she should instead request these records from the Office of Personnel Management ("OPM"). Id. at 2. According to FBCH, four separate searches were conducted for the requested records—one of records held by the Department of the Army Civilian Human Resources Agency ("CHRA"), see Decl. of Aubrey Jones ("Jones Decl.") [ECF No. 20-3] ¶¶ 5–6, and three of FBCH's own records on May 9, June 10, and August 20, 2019, see Decl. of Debbie Davis ("Davis Decl.") [ECF No. 20-6] ¶¶ 7–8.

As far as the Court can tell, no records have been released to Swick to date. Both parties have now filed motions for summary judgment, see Def.'s Mot. for Summ. J. ("Def.'s Mot.") [ECF No. 20]; Pl.'s Cross-Mot. for Summ. J. ("Pl.'s Cross-Mot.") [ECF No. 22], and the matter is ripe for consideration.

**Legal Standard**

FOIA "sets forth a policy of broad disclosure of Government documents in order 'to ensure an informed citizenry, vital to the functioning of a democratic society.'" FBI v. Abramson, 456 U.S. 615, 621 (1982) (quoting NLRB v. Robbins Tire & Rubber Co., 437 U.S. 214, 242 (1978)).

The Act requires the release of properly requested federal agency records, unless the requested materials fall within one of the nine statutory exemptions. See Milner v. Dep't of the Navy, 562 U.S. 562, 565 (2011).

"FOIA cases typically and appropriately are decided on motions for summary judgment." Defs. of Wildlife v. U.S. Border Patrol, 623 F. Supp. 2d 83, 87 (D.D.C. 2009). Summary judgment is appropriate when the pleadings and evidence demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

"It is the agency's burden to prove that it has complied with its obligations under FOIA." Democracy Forward Found. v. Ctrs. for Medicare & Medicaid Servs., Civil No. 18-635 (JDB), 2019 WL 6344935, at *1 (D.D.C. Nov. 27, 2019). To determine whether an agency has met this burden, courts may rely on agency affidavits or declarations that demonstrate the adequacy of the search for responsive records and the applicability of any claimed exemptions. See Morley v. CIA, 508 F.3d 1108, 1116 (D.C. Cir. 2007). An agency's affidavits and declarations must be "relatively detailed and non-conclusory," but are given "a presumption of good faith." SafeCard Servs. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quotation omitted).

A responding agency "must show beyond material doubt [] that it has conducted a search reasonably calculated to uncover all relevant documents." Morley, 508 F.3d at 1114 (quoting Weisberg v. DOJ, 705 F.2d 1344, 1351 (D.C. Cir. 1983)). "The question is not 'whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate.'" Steinberg v. DOJ, 23 F.3d 548, 551 (D.C. Cir. 1994) (quoting Weisberg v. DOJ, 745 F.2d 1476, 1485 (D.C. Cir. 1984)). "The court applies a reasonableness test to determine the adequacy of a search methodology, consistent with congressional intent tilting the scale in favor of disclosure." Morley, 508 F.3d at 1114 (internal quotations and citations

omitted). This "reasonableness" inquiry is necessarily "dependent upon the circumstances of the case." Davis v. DOJ, 460 F.3d 92, 103 (D.C. Cir. 2006) (quotation omitted).

## Analysis

Swick raises several potential issues with the Army's response to her FOIA requests, but these arguments can be boiled down to two main challenges. First, she rejects the Army's assertion that the proper way to obtain her psychological evaluation report is to file a request and accompanying waiver under HIPAA; second, she questions the adequacy of the Army's search for both her psychological evaluation and her personnel files. See Pl.'s Cross-Mot. at 25–30; Pl.'s Casebrief in Supp. of Pl.'s Opp'n to Def.'s Cross-Mot. for Summ. J. & Reply in Supp. of Pl.'s Mot. for Summ. J. ("Pl.'s Opp'n") [ECF No. 27] at 4–6. The Court will examine each argument in turn.

### 1. Whether HIPAA Precludes Swick's FOIA Request

Turning first to the question of whether HIPAA bars the Army from disclosing Swick's psychological evaluation, the Court concludes that it does not. To begin, the Army itself never explicitly states and explains why FOIA cannot provide an adequate basis for requesting the records. Rather, the Army suggests that there may be a tension between the two statutes that bars following the normal FOIA process. See, e.g., Oct. 2 Letter at 1 ("Protected health information, and any disclosures, is governed by HIPAA. Your request for a copy . . . must be submitted in writing and include personally identifying information . . . ."); Davis Decl. ¶ 6 ("[T]he letter informed Ms. Swick that she would have to make a request under HIPAA . . . for her medical records . . . ." (emphasis added)).

But while HIPAA may provide a streamlined approach, Swick was not wrong to rely on FOIA to acquire her medical records. A person requesting someone else's medical records needs

5

to complete certain HIPAA forms, but the same rules do not apply for individuals requesting their own records. See 45 C.F.R. § 5.22(h) ("If you are requesting the medical records of an individual other than yourself from a government program that pays or provides for health care . . . , you should submit a [HIPAA] compliant release authorization form signed by the subject of records or the individual's legally authorized representative." (emphasis added)). Moreover, in her FOIA requests, Swick provided all of the relevant information listed by FBCH in its October 2 letter, including her signature, see Exhibits to Compl. at 3–4, thereby enabling FBCH to comply with its stated recordkeeping responsibilities, cf. Oct. 2 Letter at 1.

Thus, regardless of any efficiency that may be associated with requesting the psychological evaluation under HIPAA rather than FOIA, the Army has not explained why it cannot provide Swick's records based upon the FOIA requests submitted. Moreover, the Court is aware of no prohibition on such a disclosure to Swick of her own medical records through FOIA.

**2. Adequacy of Search for the Psychological Evaluation Report**

Notwithstanding its suggestion that HIPAA should govern the release of Swick's psychological evaluation, the Army also argues that it has conducted an adequate search for Swick's psychological evaluation report. See Def.'s Mot. at 9–10. To support this claim, the Army submitted an affidavit from its FOIA officer, Debbie Davis. See Davis. Decl. ¶ 1. Davis states that "a search was conducted of Ms. Swick's medical records, FBCH Occupational Health records, and queries to the FBCH Occupational Health Clinic on May 9, 2019, and again on June 10, 2019," and that a search was also undertaken "of Ms. Swick's medical records and queries . . . to the FBCH Behavioral Health Department (Outpatient Clinic) Clinic Leadership" on August 20, 2019. Davis. Decl. ¶¶ 7–8. Although none of these searches produced any responsive records, the Army argues that the "adequacy of [its] search is not determined by the results of the

6

search or by the quantity of information ultimately released," but "by the appropriateness of the methods used to carry out the search." Def.'s Mot. at 5 (quoting Iturralde v. Comptroller of the Currency, 315 F.3d 311, 315 (D.C. Cir. 2003)). According to the Army, the use of the methods described by Davis was an "appropriate" response to Swick's requests, and the agency is therefore entitled to summary judgment.

Swick, in turn, raises a number of challenges in response, ranging from questioning the categorization of her psychological evaluation as a "medical record" given that she was never a patient at NBCH, see Pl.'s Cross-Mot. at 26; Pl.'s Opp'n at 5–6, to a general challenge to the adequacy of FBCH's searches, see Pl.'s Cross-Mot. at 26–27; Pl.'s Opp'n at 5–9.

Without addressing each of these arguments, the Court concludes that Swick has raised valid concerns about the adequacy of FBCH's search for her psychological evaluation.[1] Based on the declarations in the record, it is unclear whether FBCH possesses her psychological evaluation and is withholding it because of HIPAA's privacy restrictions, or instead simply does not possess her psychological evaluation and could not produce it even if she did submit a request and waiver under HIPAA. See Pl.'s Cross-Mot. at 27, 34. Moreover, there is serious inconsistency in the Army's arguments as to whether FBCH or another Army agency has actually searched Swick's medical records, and whether the psychological evaluation would even be categorized as a medical record in FBCH's system, given that Swick was an employee of FBCH rather than a patient there.

While inconsistencies stemming from "typographical errors and minor ambiguities" are tolerable in FOIA responses, SafeCard Servs., 926 F.2d at 1202, inconsistencies concerning

---

[1] Swick's argument that the Army is limited to its initial proffered reason that her psychological evaluation was withheld under FOIA Exemption (b)(6), see Pl.'s Cross-Mot. at 6, 9 n.4, is unavailing. Agencies are permitted to correct and amplify their reasoning during the often iterative process of responding to a FOIA request, and the Army's additional follow-up letter represents just such an extension of the administrative process. See Mead Data Ctr., Inc. v. Dep't of Air Force, 566 F.2d 242, 259 (D.C. Cir. 1977) (taking into account additional reasons, not included in an initial decision to deny disclosure).

material questions, like whether a search has even taken place, provide grounds for denying summary judgment, see DBW Partners, LLC v. USPS, Civil Action No. 18-3127 (RC), 2019 WL 5549623 at *10 (D.D.C. October 28, 2019) (denying summary judgment where "inconsistencies" in the content of redactions were "noticeable" and suggested "a less-than-precise review"); Nat'l Sec. Counselors v. CIA, 960 F. Supp. 2d 101, 147–48 (D.D.C. 2013) (concluding that, where there were inconsistencies in the content of the redacted material, the "positions cannot simultaneously be accurate" and therefore there was "failure to abide by the terms of the FOIA" (quoting Payne Enters. Inc. v. United States, 837 F.2d 486, 491 (D.C. Cir. 1988)).

The inconsistencies in the present case are material. The Court cannot determine the adequacy of the search when it is unclear which records have been searched and whether certain sets of records (like Swick's health records) have been searched at all. Specifically, the Army states both that FBCH searched Swick's medical records and that it refrained from doing so due to HIPAA. Compare Davis Decl. ¶¶ 7–8, 11 (describing three searches "of Ms. Swick's medical records . . . result[ing] in no responsive documents being discovered" and leading FBCH to conclude "that they do not possess any records responsive to Ms. Swick's request"), with id. ¶ 10 ("If Ms. Swick submitted a completed [HIPAA form] . . . to request a copy of her psychiatric examination report, she would have received the requested records."); Def.'s Mot. at 10 (noting that "FBCH properly did not search Ms. Swick's medical records for the psychiatric examination report"). This discrepancy raises a material question as to the adequacy of the search for Swick's psychological evaluation, as well as FBCH's reason for not producing the requested document. Cf. Competitive Enter. Inst. v. Office of Sci. & Tech. Policy, 185 F. Supp. 3d 26, 27 (D.D.C. 2016) (stating that the "inconsistencies have created a real question in the court's mind . . . sufficient to

warrant limited discovery"). Based on Davis's declaration, as well as the Army's briefing, it is unclear whether the Army is in possession of her psychological evaluation record.

The Army has also failed to respond adequately to Swick's suggestion that her psychological evaluation may not have been labeled a "medical record" in the first place because she was not a patient of FBCH, but rather an employee, see Pl.'s Cross-Mot. at 26–27. The Army argues that, if Swick was never a patient at FBCH, "it is unclear how the agency's search could be inadequate if her records never existed at FBCH." See Def.'s Mem. in Supp. of Def.'s Opp'n to Pl.'s Cross-Mot. for Summ. J. & Reply in Supp. of Def.'s Mot. for Summ. J. ("Def.'s Opp'n") [ECF No. 23] at 8. But Swick's point is not that she never received a psychological evaluation or that a record of that evaluation does not exist. Rather, she is arguing that, because the evaluation was conducted as part of her employment, it may be categorized not as a "medical record" but as part of a personnel file, or the like. See Pl.'s Cross-Mot. at 26–27. Notwithstanding Davis's statement that she searched "the only locations the records Ms. Swick requested would be if they were in the possession of FBCH," Davis Decl. ¶ 11, the question how FBCH would have categorized Swick's psychological evaluation merits further clarification.

In sum, the Court will require the Army to clarify (1) whether FBCH has found Swick's psychological evaluation and is withholding it due to a FOIA exemption and/or HIPAA; (2) if FBCH has not yet found Swick's psychological evaluation, whether it has searched Swick's medical records; and (3) whether FBCH may have labeled or stored Swick's psychological evaluation as something other than a medical record (for instance, as a personnel record) and, if so, whether FBCH has searched those other types of files as well.

**3. Adequacy of the Search for the Personnel File**

9

The Army next contends that its search for Swick's personnel file was adequate under the standard required by FOIA law, arguing that the Davis declaration was "submitted in good faith." See Def.'s Mot. at 11 (citing Weisberg, 705 F.2d at 1351). According to the Davis declaration, the Army concluded that FBCH did not possess Swick's personnel records after "a search was conducted of Swick's medical records, FBCH Occupational Health records, and queries to the FBCH Occupational Health Clinic on May 9, 2019, and again on June 10, 2019," as well as a search of "the FBCH Behavioral Health Department (Outpatient Clinic) Clinic Leadership" on August 20, 2019. See Davis. Decl. ¶¶ 7–8. FBCH also forwarded Swick's request to the Army's Civilian Human Resources Agency ("CHRA") to determine if the records were there. See Def.'s Mot. for at 11–12. Aubrey Jones, CHRA's FOIA officer, conducted a physical and electronic search that uncovered none of Swick's records, and concluded that Swick's Official Personnel File was located at the National Personnel Records Center ("NPRC"). See id. at 12–13.

The Army notes that such a transfer to the NPRC is a standard operating practice for federal agencies, and it cites the Office of Personnel Management ("OPM") Operating Manual, which explains that former employees should direct their FOIA requests for personnel files to NPRC. See id. at 13; see also Reference Ex. to Def.'s Mot. ("OPM Manual") [ECF No. 20-7] at 81. Based on these searches, as well as the OPM guidelines, the Army argues that FBCH no longer has access to Swick's personnel file and is therefore not responsible under FOIA for producing those records. See Def.'s Opp'n at 4; see also Def.'s Mot. at 13 (stating that "[n]ormally, the agency sends [personnel records to the NPRC] within 120 days after the employee separates" and that the originating agency "must disable its access to the electronic version of the personnel folder").

For the most part, the Court agrees that the Army's search has been adequate. The Army has submitted two separate affidavits detailing which records were searched, by whom, and

10

through what process. See Davis Decl. ¶ 7 (stating that "a search was conducted of Ms. Swick's medical records, FBCH Occupational Health records, and queries to the FBCH Occupational Health Clinic . . . by the Clinic Nurse in Charge for records responsive to Ms. Swick's request"); Jones Decl. ¶¶ 4–6 (stating that he identified and "personally conducted a physical and electronic search" of those areas that might contain Swick's personnel records—specifically, "(1) physical file cabinets; (2) physical records holding areas; and (3) CHRA's computer network"). These statements are sufficiently detailed to satisfy the Army's burden to demonstrate an adequate search. Indeed, Swick herself does not appear to contest the sufficiency of the physical search, but she questions the methodology and thoroughness of the electronic search. See Pl.'s Cross-Mot. at 28–30.

Here, the Court agrees with Swick. "In compliance with the reasonableness standard, [an agency's] affidavits 'must . . . set forth the search terms and the type of search performed, and aver that all files likely to contain responsive materials (if such records exist) were searched.'" See Bigwood v. Dep't of Def., 132 F. Supp. 3d 124, 135 (D.D.C. 2015) (some alterations omitted) (quoting Nation Magazine v. U.S. Customs Serv., 71 F.3d 885, 890 (D.C. Cir. 1995)). Neither declaration clearly explains the search terms that were used to search the electronic records of FBCH or CHRA. Davis's declaration fails to make clear which areas that were searched were physical and which were electronic databases, and her conclusory statement that "FBCH personnel no longer have access to Ms. Swick's electronic Official Personnel Folder" fails to explain how she came to that conclusion, including which databases or search terms she used in her search. See Davis Decl. ¶ 9. As for CHRA, Jones's declaration also fails to set forth his search terms. He does describe "searching the files and records alphabetically for the name 'Swick,'" Jones Decl. ¶ 6, but that reference comes in the context of a paragraph describing his physical search for

Swick's files. He also mentions that "Ms. Swick was found in the Civilian Personnel On-Line (CPOL) [database]," which was how Jones concluded that Swick had been separated from her job and that her personnel files had been transferred to the NPRC. Id. But, once again, Jones does not explain if this CPOL database is the only relevant part of "CHRA's computer network" for purposes of finding Swick's records. Id. ¶¶ 5–6. The Court will thus require the Army to clarify through sworn affidavit or declaration, or through relevant documentation, the exact nature of the electronic search by FBCH and CHRA for Swick's personnel files, including a specific description of which databases were searched and which search terms were used.[2] Cf. Reporters Comm. for Freedom of Press v. FBI, 877 F.3d 399, 402 (D.C. Cir. 2017) ("To prevail on summary judgment, an 'agency must show that it made a good faith effort . . . ,' which it can do by submitting '[a] reasonably detailed affidavit, setting forth the search terms and the type of search performed . . . .'" (quoting Oglesby v. Dep't of Army, 920 F.2d 57, 68 (D.C. Cir. 1990)).

Moreover, even assuming that the physical and electronic searches by FBCH and CHRA were adequate and demonstrate that the records are solely accessible through NPRC, that conclusion still does not end the inquiry. Judges in this District generally do not require agencies to produce records under FOIA when they are not the custodian of those records. See Thornton-Bey v. Exec. Office for U.S. Att'ys, 844 F. Supp. 2d 159, 161 (D.D.C. 2012) (stating that "as [the attorney] was no longer employed by the Department of Justice, plaintiff would have to seek his records through the [NPRC] . . . ."); cf. Bloomgarden v. DOJ, 10 F. Supp. 3d 146, 153 (D.D.C. 2014) (stating that defendant had "no legal obligation" to obtain records located at the NPRC). But there is a caveat to this general rule: a responding agency must establish definitively that the

---

[2] The Army's response to Swick's request for her psychological evaluation raised concerns beyond the search terms used. The Court will also require the Army to provide a specific description of which exact databases were searched and which search terms were used in looking for her psychological evaluation as well.

responsive records are located at the NPRC.  See Parker v. Exec. Office for U.S. Att'ys, 852 F. Supp. 2d 1, 9 (D.D.C. 2012) ("[T]he Court cannot conclude that responding to the FOIA request in this case fell within [the National Archives and Records Administration's] purview instead of the DOJ's because no one has been able to inform plaintiff or the Court where the records are actually located.").  And the agency must demonstrate that it has transferred not only physical control, but also legal custody of the records.  See Fleming v. Medicare Freedom of Info. Grp., Civil Action No. 1:15-cv-01135 (EGS/GMH), 2019 WL 6330719 at *1 (D.D.C. Oct. 24, 2019) (denying summary judgment because "EOUSA still had legal custody of [the responsive records] although they had been physically transferred to the [NPRC]"); see also Conway v. U.S. Agency for Int'l Dev., 99 F. Supp. 3d 171, 179–80 (D.D.C. 2015) ("The determinative question, therefore, . . . is whether those documents have been legally transferred to the National Archives' permanent custody or whether the records remain in the legal custody of USAID.").

The Army has not sufficiently established that it has ceased to have legal custody over Swick's personnel files.  As noted above, the present record is sufficiently clear to establish the physical location of Swick's personnel records at NPRC.  See Jones Decl. at ¶ 6.  But the record is less clear when it comes to whether FBCH transferred legal control over the records—in other words, whether it still has legal custody over the records and can request them from NPRC. Cf. 36 CFR § 1235.22 ("Legal custody of records passes from the agency to [National Archives and Records Administration] when the appropriate [National Archives] official signs [a form] acknowledging receipt of records.").[3]  Defendant's briefing suggests that legal custody may have already been transferred to the NPRC along with physical custody, but the Jones declaration does

---

[3] See National Personnel Records Center, National Archives (Jan. 8, 2020), https://www.archives.gov/personnel-records-center ("The National Personnel Records Center (NPRC) is one of the National Archives and Records Administration's (NARA) largest operations.").

not establish this transfer with sufficient clarity. This distinction is material to the outcome of the case, and here prevents the Court from granting summary judgment for the Army.

The Army asserts that "[w]hen an employee departs the agency, the agency ships the physical personnel records to the [NPRC] and disables its access to the former employee's electronic Official Personnel Folder." See Def.'s Mot. at 13; see also Davis Dec. ¶ 6 (stating that "when an employee leaves the respective agency, the Human Resource Specialists must disable [their] access to the electronic version of the personnel folder to ensure compliance with the Privacy Act"); OPM Manual at 7-8 ("Normally, the agency sends the Folder within 120 days after the employee separates."). While these statements may be true and the policies well established, they do not address whether the Army in this case has actually transferred legal custody and disabled all access to Swick's personnel folder. See 36 CFR § 1235.22; see also Fleming, 2019 WL 6330719 at *1.

Until legal custody has been transferred to the NPRC, "records remain in the legal custody of the agencies that created them," and "[r]equests for access . . . should be made directly to the originating agency." 36 CFR § 1250.8(c). The thoughtful practice of other judges in this District counsels the Court to deny summary judgment at this stage and to require the Army to "address the possibility that, although [it] did not have physical custody of the records, it might have legal custody of them." Fleming, 2019 WL 6330719 at *3. Therefore, the Court will require the Army to clarify through sworn affidavit or declaration, or through relevant documentation, whether it still has access to and legal custody over Swick's personnel file, physical transfer notwithstanding. If the Army does still have legal custody, it should request the responsive records from the NPRC and provide them to Swick as requested.

## Conclusion

For the foregoing reasons, the Court will deny without prejudice the Army's motion for summary judgment and will deny without prejudice Swick's cross-motion for summary judgment. Moreover, the Court will require the Army to provide additional, more specific information as to (1) whether FBCH has found Swick's psychological evaluation and is withholding it due to a FOIA exemption and/or HIPAA; (2) if FBCH has not yet found Swick's psychological evaluation, whether it has searched Swick's medical records; (3) whether FBCH may have labeled or stored Swick's psychological evaluation as something other than a medical record (for instance, as a personnel record) and, if so, whether FBCH has searched those other types of files as well; (4) the specific electronic databases searched and the search terms used to locate Swick's psychological evaluation and personnel file; and (5) whether FBCH or the Army retains legal custody of Swick's personnel file, notwithstanding its physical transfer to NPRC.

/s/
JOHN D. BATES
United States District Judge

Dated: July 2, 2020