## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NANCY J. SWICK,<br><br>    Plaintiff,<br><br>       v.<br><br>UNITED STATES DEPARTMENT OF THE ARMY,<br><br>    Defendant. | Civil Action No. 18-1658 (JDB) |

## MEMORANDUM OPINION

Plaintiff Nancy Swick brought this action pro se under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, against defendant U.S. Department of the Army seeking a psychiatric report and personnel records from her former employment at Fort Belvoir Community Hospital ("FBCH"). The Court denied the parties' original cross-motions for summary judgment because the "record [was] neither sufficiently clear nor sufficiently detailed" as to what searches had been conducted. Mem. Op. (July 2, 2020) ("July Mem. Op.") [ECF No. 31] at 1; see also Order (July 2, 2020) ("July Order") [ECF No. 30]. Now before the Court are the parties' renewed cross-motions for summary judgment. For the reasons explained below, the Court will grant the Army summary judgment on Swick's request for her psychiatric report, but deny both sides summary judgment on her request for her personnel file. As a result, the Court will again require the Army to provide additional information about the thoroughness and substance of its search for Swick's personnel file before submitting any renewed dispositive motions.

## Background

The facts and procedural history of this case are more fully set forth in the Court's decision denying the parties' earlier motions for summary judgment. See July Mem. Op. at 1–3. As

relevant here, Swick worked as an OB/GYN nurse practitioner at FBCH in Fort Belvoir, Virginia from 2011 to 2013.  See Ex. to Compl. [ECF No. 1-1] at 3, 24.  In 2017, Swick submitted two FOIA requests to FBCH seeking : (1) a report from a psychiatric evaluation she was apparently ordered to undergo during her employment there; and (2) "any and all documents with [her] name, social security number, [and] date of birth" that were stored either in her personnel file or "that are being maintained/filed separately due to privacy laws and regulation[s]."  See id. at 3, 14–15, 20–21.  FBCH denied both requests, see Oct. 2, 2018 Letter from FBCH [ECF No. 20-2] at 1, and after exhausting her administrative remedies, Swick filed the instant lawsuit, see Compl. [ECF No. 1]; Ex. to Compl. at 39, 57; Am. Compl. [ECF No. 12] ¶¶ 1, 13.

In September 2019, the parties filed their first cross-motions for summary judgment.  See Def.'s Mot. for Summ. J. [ECF No. 20] at 1; Pl.'s Cross-Mot. for Summ. J. [ECF No. 22] at 1.  In support of its motion, the Army asserted that FBCH "[had] not search[ed] Ms. Swick's medical records" for her psychiatric evaluation because she had "not submitted the proper paperwork" under the Health Insurance Portability and Accountability Act ("HIPAA") "for FBCH to do so." Def.'s Mot. for Summ. J. at 10.  The Army also contended that, because Swick left FBCH's employ in 2013, her personnel file was now located at the National Personnel Records Center ("NPRC") and the Office of Personnel Management ("OPM"), not the Army, had custody of it.  Id. at 11 & n.2.  Even so, the Army filed two affidavits attesting that four searches had been conducted for the requested files—one of records held by the Department of the Army Civilian Human Resources Agency ("CHRA") and three of FBCH's own records—and that no responsive records had been found.  See Decl. of Aubrey Jones ("Jones Decl.") [ECF No. 20-3] ¶¶ 5–6; Decl. of Debbie Davis ("Davis Decl.") [ECF No. 20-6] ¶¶ 7–8.

In denying summary judgment to both sides, this Court concluded that the Army had not

established that an adequate search for Swick's psychiatric evaluation and personnel file had been conducted.  July Mem. Op. 6–14.  As to the psychiatric evaluation, the Court rejected the Army's assertion that HIPAA barred "disclosure to Swick of her own medical records through FOIA."  Id. at 6.  Moreover, the Court explained that it could not "determine the adequacy of the search" for Swick's evaluation because "the Army state[d] both that FBCH searched Swick's medical records and that it refrained from doing so due to HIPAA," id. at 8, and because the Army "failed to respond adequately to Swick's suggestion that her psychological evaluation may not have been labeled a 'medical record' in the first place because she was not a patient of FBCH, but rather an employee," id. at 9.

With respect to Swick's personnel file, the Court concluded that the Army had established an adequate physical search, but not an adequate electronic search.  Id. at 10–11.  For starters, the Court found that neither affidavit "clearly explain[ed] the search terms that were used to search the electronic records of FBCH or CHRA."  Id. at 11.  Although FBCH's FOIA officer, Debbie Davis, "state[d] that 'FBCH personnel no longer [had] access to Ms. Swick's electronic Official Personnel Folder,'" Davis "fail[ed] to explain how she came to that conclusion, including which databases or search terms she used in her search."  Id.  And while CHRA's FOIA officer, Aubrey Jones, "mention[ed] that 'Ms. Swick was found in the Civilian Personnel On-Line (CPOL) [database],' which was how [he] concluded that Swick had been separated from her job and that her personnel files had been transferred to the NPRC," he "[did] not explain if this CPOL database [was] the only relevant part of 'CHRA's computer network' for purposes of finding Swick's records."  Id. at 12.

Separately, the Court determined that although "the present record [was] sufficiently clear to establish the physical location of Swick's personnel records at NPRC," it remained unclear

whether FBCH or the Army "still [had] legal custody over the records and [could] request them from NPRC." Id. at 13–14.  The Army cited OPM guidelines that "when an employee departs the agency, the agency ships the physical personnel records to the [NPRC] and disables its access to the former employee's electronic Official Personnel Folder"; and that "normally" this happens "within 120 days after the employee separates."  See Def.'s Mot. for Summ. J. at 14 (citing OPM Operating Manual: The Guide to Personnel Recordkeeping ("OPM Manual") [ECF No. 32-8] at 7-1, 7-8).  But the Court explained that "[w]hile these statements may be true and the policies well established, they do not address whether the Army in this case has actually transferred legal custody and disabled all access to Swick's personnel folder."  July Mem. Op. at 14.

In light of these deficiencies, the Court ordered the Army to include in its renewed motion for summary judgment:

> a supplemental declaration, as well as any relevant supporting documents, addressing (a) whether FBCH has found Swick's psychological evaluation and is withholding it due to a FOIA exemption and/or HIPAA; (b) if FBCH has not yet found Swick's psychological evaluation, whether it has searched Swick's medical records; (c) whether FBCH may have labeled or stored Swick's psychological evaluation as something other than a medical record (for instance, as a personnel record) and, if so, whether FBCH has searched those other types of files as well; (d) the specific electronic databases searched and the search terms used to locate Swick's psychological evaluation and personnel file; and (e) whether FBCH or the Army retains legal custody of Swick's personnel file, notwithstanding its physical transfer to NPRC.

July Order at 1–2; see also July Mem. Op. at 15.  The parties have now filed renewed cross-motions for summary judgment, which have been fully briefed and are ripe for consideration.  See Def.'s Renewed Mot. for Summ. J. [ECF No. 32] ("Def.'s Br."); Pl.'s Renewed Cross-Mot. for Summ. J. ("Pl.'s Br.") [ECF No. 34].

## Legal Standard

"FOIA cases typically and appropriately are decided on motions for summary judgment."
Defs. of Wildlife v. U.S. Border Patrol, 623 F. Supp. 2d 83, 87 (D.D.C. 2009).  Summary judgment
is warranted when the pleadings and evidence demonstrate that "there is no genuine dispute as to
any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

"It is the agency's burden to prove that it has complied with its obligations under FOIA."
Democracy Forward Found. v. Ctrs. for Medicare & Medicaid Servs., Civil No. 18-635 (JDB),
2019 WL 6344935, at *1 (D.D.C. Nov. 27, 2019).  This means that an agency must "demonstrate
beyond material doubt that its search was reasonably calculated to uncover all relevant
documents."  Valencia–Lucena v. U.S. Coast Guard, 180 F.3d 321, 325 (D.C. Cir. 1999) (internal
quotation marks omitted).  To carry this burden, an agency may submit affidavits that, in
reasonable detail and in a non-conclusory fashion, set forth the scope and method of its search,
Morley v. CIA, 508 F.3d 1108, 1116 (D.C. Cir. 2007), and such affidavits are "accorded a
presumption of good faith," SafeCard Servs. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991).
Although an "affidavit need not go into exhaustive detail about every aspect of the search," Yunes
v. DOJ, No. CV 14-1397 (JDB), 2016 WL 4506971, at *3 (D.D.C. Aug. 26, 2016), it must "set[]
forth the search terms and the type of search performed, and aver[] that all files likely to contain
responsive materials (if such records exist) were searched," Oglesby v. U.S. Dep't of Army, 920
F.2d 57, 68 (D.C. Cir. 1990).

## Analysis

### 1.  Adequacy of Search for the Psychiatric Evaluation Report

The Army has conducted an adequate search for Swick's psychiatric evaluation report.  In
support of its renewed motion for summary judgment, the Army filed a supplemental declaration

from Davis.  See Decl. of Debbie Davis ("Suppl. Davis Decl.") [ECF No. 32-7] at ¶ 4.  Specifically, Davis responds to the Court's inquiries as follows: (a) "FBCH does not have a psychiatric evaluation for Swick in any of its records.  As a result, FBCH is not withholding Swick's psychiatric evaluation under HIPAA or FOIA"; (b) "I have searched Swick's medical records repeatedly, but I have not found a psychiatric evaluation for Swick"; (c) "FBCH has not labeled or stored Swick's psychiatric evaluation as something other than a medical record"; and (d) "I have searched the following specific databases for Swick's psychiatric evaluation: the Armed Forces Longitudinal Technology Application ('AHLTA'), which is the military's comprehensive electronic health records; the Health Artifact and Image Management Solution [database]. . . and Swick's occupational health file.  I used the following search terms: searched by patient name, appointment date, discipline, and specialty (psychiatry)."  Id. at ¶¶ 4–9.

This supplemental declaration "set[s] forth the scope and method of the agency's search" "in reasonable detail and in a non-conclusory fashion," identifying the search terms used.  See Morley, 508 F.3d at 1116; Oglesby, 920 F.2d at 68.  And together, Davis's declarations make clear that FBCH would have stored Swick's psychiatric evaluation as a medical record, if it existed, and that the medical records searched are the only ones "likely to contain responsive materials."  See Oglesby, 920 F.2d at 68; see also Davis Decl. ¶ 7; Suppl. Davis Decl. ¶ 9.

Swick raises two narrow objections to the Army's search for her psychiatric evaluation, neither of which is compelling.  To begin, Swick questions whether Davis applied all four search terms at once, or in succession.  Pl.'s Br. at 17.  Specifically, Swick hypothesizes that if FBCH had done a combined search for files tagged with a "discipline" of OB-GYN and a "specialty" of psychiatry, that search would not be reasonably calculated to yield responsive results because Swick is "not . . . an OB-GYN Nurse Practitioner with a specialty in psychiatry."  See id.  The

problem with this argument is that Davis never avers that she searched for medical records associated with a "discipline" of OB-GYN, see Suppl. Davis Decl. at ¶ 9, and Swick's hypothetical assertions to the contrary do not prove otherwise, see Oglesby, 920 F.3d at 67 n.13 ("[H]ypothetical assertions are insufficient to raise a material question of fact with respect to the adequacy's of the agency's search."). Swick interprets the search term "discipline" to refer to her own discipline as an OB-GYN nurse practitioner, see Pl.'s Br. at 17, but that interpretation is unfounded. Not every hospital patient is a health professional, like Swick, with a medical "discipline"; rather, as the Army clarifies in its briefing, in the context of an electronic health records database, the term "discipline" naturally refers to that of the attending physician, not the patient. See Def.'s Br. at 10. Swick does not otherwise challenge the search terms used, and the Court finds them reasonable under the circumstances. See Bigwood v. U.S. Dep't of Def., 132 F. Supp. 3d 124, 140 (D.D.C. 2015) ("Where the search terms are reasonably calculated to lead to responsive documents, a court should neither 'micromanage' nor second guess the agency's search.").

Swick also faults the Army for "not discuss[ing] the digital version of [her] Civil Employee Medical Record ('CEMR')," which documents "occupational and nonoccupational health information for civilian employees." See Pl.'s Br. at 17–18. But as Swick herself acknowledges, the CEMR is "maintained in AHLTA," see id. at 17, and therefore, any separate search of a CEMR database would be futile since FBCH has already searched AHLTA. See Span v. U.S. Dep't of Justice, 696 F. Supp. 2d 113, 120 (D.D.C. 2010) (denying plaintiff's request for additional searches that "would have been redundant").

### 2. Adequacy of Search for the Personnel File

The Court continues to lack sufficient information to evaluate the adequacy of the Army's

search for Swick's personnel records.  Inexplicably, the Army has not—despite the Court's explicit order—provided any supplemental declaration or supporting documentation addressing "the specific electronic databases searched and the search terms used to locate Swick's . . . personnel file."  See July Order at 1–2.  Davis's supplemental declaration only details FBCH's searches for Swick's psychiatric evaluation, see Suppl. Davis Decl. at ¶ 9, and the Army has not submitted additional affidavits from Jones or any other CHRA officer to clarify the record.  Instead, the Army continues to rely on Jones's original declaration to establish that the Army "conducted an exhaustive search for Plaintiff's personnel records and determined that they are presently located at the NPRC, not FBCH."  Def.'s Mem. in Supp. of Def.'s Opp'n to Pl.'s Cross-Mot. for Summ. J. and Reply in Supp. of Def.'s Renewed Mot. for Summ. J. ("Def.'s Reply") [ECF No. 37] at 8 (citing Jones Decl. ¶¶ 4–6); see also Def.'s Br. at 12 (citing Jones Decl. ¶¶ 5–6).  But, as summarized above, the Court already detailed in its prior opinion why that declaration did not establish an adequate electronic search for Swick's personnel file.  See July Mem. Op. at 11–12 (stating that "Jones's declaration . . . fails to set forth his search terms" and "does not explain if th[e] CPOL database is the only relevant part of 'CHRA's computer network' for purposes of findings Swick's records.").

Therefore, the Court will—once again—require the Army "to clarify through sworn affidavit or declaration, or through relevant documentation, the exact nature of the electronic search by FBCH and CHRA for Swick's personnel files, including a specific description of which databases were searched and which search terms were used."  See id. at 12.  That submission should also "describe at least generally the structure" of FBCH's and CHRA's electronic file systems, see Int'l Counsel Bureau v. U.S. Dep't of Def., 657 F. Supp. 2d 33, 40 (D.D.C. 2009) (citation omitted), and provide "the agency's rationale in identifying [any] specific [databases]"—

such as CPOL—"with potentially responsive records," see Bigwood, 132 F. Supp. 3d at 139.

Additionally, the Army has not sufficiently addressed "whether FBCH or the Army retains legal custody of Swick's personnel file, notwithstanding its physical transfer to NPRC."  See July Order at 2.  As the Court previously explained, FOIA does not typically require a responding agency to produce records that it no longer possesses or has custody over, but when the records pertain to an ex-employee, the "agency must establish definitively that [those] records are located at the NPRC," July Mem. Op. at 12–13 (citing Parker v. Exec. Office for U.S. Att'ys, 852 F. Supp. 2d 1, 9 (D.D.C. 2012)), and "that [the agency] has transferred not only physical control, but also legal custody of the records," id. at 13 (citing Fleming v. Medicare Freedom of Info. Grp., Civil Action No. 1:15-cv-01135 (EGS/GMH), 2019 WL 6330719 at *1 (D.D.C. Oct. 24, 2019)).

Davis's supplemental declaration addresses the issue of legal custody as follows:

> FBCH does not retain 'legal custody' of Swick's personnel file. Swick's personnel file is, and remains under the custody and control of the Office of Personnel Management (OPM).  The FBCH access to OPM personnel records on Swick was terminated in or about one year after Swick, or any employee, leaves FBCH employ which is completed by OPM in accordance with OPM policy and practice.

Suppl. Davis Decl. at ¶ 10.  No supporting documentation is provided, except for OPM's Guide to Personnel Recordkeeping, which the Army had supplied in support of its original motion for summary judgment, too.

At the outset, this supplemental declaration does not address whether the Army— separately from FBCH—has legal custody of Swick's personnel files.  See July Order at 2 (ordering the Army to address "whether FBCH or the Army retains legal custody of Swick's personnel file) (emphasis added).  Hence, the Army's filing is plainly deficient in this regard. Moreover, as Swick asserts, see Pl.'s Statement of Material Facts in Genuine Dispute [ECF No. 34-1] at 6–7, 9, the Army still has not provided any evidence that FBCH "actually transferred legal

custody and disabled all access to Swick's personnel folder," July Mem. Op. at 14.  Rather, Davis only offers conclusory statements that "FBCH does not retain 'legal custody' of Swick's personnel file" and that OPM terminated FBCH's access to Swick's records "in accordance with OPM policy and practice."  See Suppl. Davis Decl. at ¶ 10.  Without any explanation of how Davis came to these conclusions, including which databases or search terms she used in her search, the Court lacks any basis to assess whether a transfer took place.

The Army's continued reliance on OPM's Guide to Personnel Recordkeeping as evidence that the Army lacks custody of Swick's personnel records is also misplaced.  See Def.'s Br. at 13. As the Court already instructed, the Guide's statement that "the losing agency, after completion and verification of a transfer of an electronic personnel folder, must disable its access to the electronic version of the personnel folder," see OPM Manual at 7-1, does not establish that FBCH or CHRA did so in Swick's case.  See July Mem. Op. at 14.  Moreover, Davis's assertions that OPM disabled FBCH's access to Swick's personnel file one year after she separated from FBCH, see Suppl. Davis Decl. at ¶ 10, are not even fully consistent with the practices stated in the OPM Guide, which dictate that the "losing agency"—meaning the "last employing agency"—must disable its access to the personnel file, typically within ninety days after an employee separates, see OPM Manual at 7-1, 7-6.

The Army's argument that OPM is the real custodian of Swick's personnel file fails for a similar reason.  See Def.'s Reply at 5–6.  The Army explains that, although the employing agency typically serves as the custodian of the OPF during an employee's tenure with that agency, custody transfers to OPM after the employee leaves federal service.  See id. at 5; see also 5 C.F.R. §§ 293.303(c), (d)(1), (5).  However, as the Army itself acknowledges, the employing agency only relinquishes custody "once the OPF has been transferred to and accepted by the NPRC."  See

Def.'s Reply at 6 (quoting 5 C.F.R. § 293.303(d)(4)).  And OPM only acquires custody of the OPF "[o]nce NPRC has approved the transfer."  5 C.F.R. § 293.303(d)(5).  Hence, because the Army provides no evidence that Swick's files were "accepted by the NPRC" or that the "NPRC has approved the transfer," this argument does not further its case or resolve the Court's inquiries.  See Brewer v. U.S. Dep't of Justice, Civil Action No. 3:18-CV-1018, 2018 WL 6682263, at *3 (N.D. Tex. Dec 3, 2018) (concluding that defendant failed to establish OPM had "legal custody" over ex-employees' personnel files because no evidence showed "that the records have been transferred to and accepted by" the NPRC); see also Parker, 852 F. Supp. 2d at 9 (denying summary judgment to agency where "there had been no clear factual showing" that the ex-employee's "records were actually moved or received").

Moreover, because the Army discusses the OPF at great length in its briefing, the Court finds it prudent to reiterate that Swick's FOIA request is not so limited.  That request covers "any and all documents with [her] name, social security number, [and] date of birth" that were stored either in her "OPM personnel file" or "that are being maintained/filed separately due to privacy laws and regulation[s]."  Ex. to Compl. at 14.  As Swick references, see Pl.'s Statement of Material Facts in Genuine Dispute at 7–8; Pl.'s Reply at 17, a federal employee's "personnel records" may include both an OPF and an Employee Medical Folder ("EMF").  See OPM Manual at 1–6–1–8. An EMF houses an employee's "occupational medical records," 5 C.F.R. § 293.502, and is stored separately from the OPF due to federal regulations, id. § 293.505(b).  An agency "must establish an EMF when the employee leaves the employing agency and occupational medical records for that employee exist."  Id. § 293.505(a).  And when an employee separates from federal service, "the EMF must be forwarded to the NPRC with the OPF."  Id. § 293.510(b).  Therefore, any further briefing on whether the Army has legal custody of or electronic access to Swick's personnel

records should address both Swick's OPF and her EMF, if one was created for her.

This brings the Court to a final discrepancy: despite Davis's assertion that FBCH lacks any access to Swick's personnel records, her supplemental declaration reveals that FBCH still has electronic access to "Swick's occupational health file."  See Suppl. Davis. Decl. at ¶ 9.  Whether or not this file is, in fact, Swick's EMF is not evident from the current record, as an EMF only contains those "occupational medical records . . .  designated for retention" by the agency.  See 5 C.F.R. § 293.502.   However, given that FBCH has apparently "retained" some occupational medical records for Swick, the Court will ask the Army to clarify the nature of this file, as well as why it does not otherwise contain documents responsive to Swick's FOIA request for "any and all documents with [her] name, social security number, [and] date of birth that are being maintained/filed separately" from her OPM personnel file "due to privacy laws and regulations." See Ex. to Compl. at 14.

### Conclusion

For the foregoing reasons, the Court will grant the Army's renewed motion for summary judgment as it relates to Swick's FOIA request for her psychiatric evaluation and will deny Swick's renewed cross-motion on this issue; but the Court will deny without prejudice both parties' renewed motions for summary judgment as they relate to Swick's FOIA request for her personnel file.  With respect to that request, the Court will require the Army to provide more specific information as to: (1) the structure of FBCH's and CHRA's electronic systems for storing personnel records and the rationale for identifying certain databases with potentially responsive files; (2) the specific electronic databases searched and the search terms used to locate Swick's personnel file; (3) whether FBCH or the Army retains legal custody of or electronic access to Swick's personnel file (including her OPF and any EMF that was created for her), notwithstanding

the file's physical transfer to NPRC; and (4) whether "Swick's occupational health file" at FBCH

is indeed her EMF and, if not, why that file is not otherwise responsive to her FOIA request.  A

separate order will be issued on this date.

_____/s/_____
JOHN D. BATES
United States District Judge

Dated:  <u>November 9, 2020</u>