UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NANCY J. SWICK,<br><br>    Plaintiff,<br><br>    v.<br><br>UNITED STATES DEPARTMENT OF THE ARMY,<br><br>    Defendant. | Civil Action No. 18-1658 (JDB) |

MEMORANDUM OPINION

Pro se plaintiff Nancy Swick brought this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, against defendant U.S. Department of the Army to obtain a psychiatric evaluation report and personnel records from her former employment at Fort Belvoir Community Hospital ("FBCH"). Mem. Op., Nov. 9, 2020 [ECF No. 42] ("Nov. 2020 Mem. Op.") at 1. The Army sent Swick her personnel records on December 4, 2020, Pl.'s Statement of Material Facts Not in Genuine Dispute [ECF No. 60] ("Swick's Statement of Undisputed Facts") ¶ 26, and her psychiatric evaluation report on February 21, 2021, id. ¶¶ 34–35. These records were located and produced only after diligent efforts by plaintiff and the Court to prompt the Army to respond to Swick's FOIA requests. Swick disputes that the Army's production of these documents fully satisfies its FOIA obligations, and both parties have moved for summary judgment. See generally Def.'s Second Renewed Mot. for Summ. J. [ECF No. 57] ("Army's Mot."); Pl.'s Second Renewed Cross Mot. for Summ. J. [ECF No. 60] ("Swick's Cross-Mot."). Because the Army has met its FOIA obligations, the Court will grant the Army's motion for summary judgment and deny Swick's cross-motion.

1

**Background**

From 2011 to 2013, Swick was employed as an OB/GYN nurse practitioner at FBCH in Fort Belvoir, Virginia. Swick's Statement of Undisputed Facts ¶¶ 1–2; accord Nov. 2020 Mem. Op. at 2. In 2017, Swick submitted two FOIA requests to FBCH seeking: (1) a "[p]sychiatric [e]xamination [r]eport" from an evaluation she underwent in 2012 and (2) "any and all documents with [her] name, social security number, [and] date of birth" that were stored either in her Office of Personnel Management ("OPM") personnel file or "that are being maintained/filed separately due to privacy laws and regulation[s]." Exs. to Compl. [ECF No. 1-1] at 1, 14; accord Swick's Statement of Undisputed Facts ¶¶ 3, 5. FBCH denied both requests. Swick's Statement of Undisputed Facts ¶¶ 6–7; accord Nov. 2020 Mem. Op. at 2.

Swick initiated litigation in this Court in 2018. Swick's Statement of Undisputed Facts ¶ 15; Compl. [ECF No. 1] at 1. She later filed an amended complaint in 2019. Swick's Statement of Undisputed Facts ¶ 15; Am. Compl. [ECF No. 12] at 1. That amended complaint has been the subject of two separate rounds of summary judgment briefing. The Court denied both Swick's and the Army's original motions for summary judgment in their entirety, Mem. Op., July 2, 2020 [ECF No. 31] at 1, and then granted the Army's renewed motion for summary judgment in part, Nov. 2020 Mem. Op. at 1. The Court determined that the Army had adequately searched for Swick's psychiatric evaluation report but that more information was needed to judge the adequacy of the Army's search for Swick's personnel records. Nov. 2020 Mem. Op. at 5, 7–8.

The parties then informed the Court that the Army sent Swick 229 pages of her personnel records—which included her official personnel folder, employee medical folder, and occupational health file—on December 4, 2020. Swick's Statement of Undisputed Facts ¶ 26; accord Def.'s Mot. to Stay [ECF No. 43] at 2. The Army located these documents after conducting several

searches. First, the Army's Civilian Human Resources Agency's FOIA Officer, Aubrey Jones, physically searched the Civilian Human Resources Agency's file cabinets and records holding areas for the name "Swick." Swick's Statement of Undisputed Facts ¶¶ 22–24; Decl. of Aubrey Jones [ECF No. 20-3] ¶¶ 4–6. Jones also electronically searched the Civilian Human Resources Agency's computer network. Swick's Statement of Undisputed Facts ¶ 24; accord Decl. of Aubrey Jones ¶ 6. Jones's searches did not produce any results. Swick's Statement of Undisputed Facts ¶ 24; accord Decl. of Aubrey Jones ¶ 6. Second, a clinic nurse unsuccessfully searched "Swick's medical records, FBCH Occupational Health records, and queries to the FBCH Occupational Health Clinic." Decl. of Debbie Davis, Sept. 6, 2019 [ECF No. 20-6] ("Davis Sept. 2019 Decl.") ¶ 7. Finally, Major Robert Wald—an attorney with the General Litigation Branch at Fort Belvoir—coordinated with attorneys at the National Archives and Records Administration and obtained Swick's official personnel folder and employee medical folder. Decl. of Major Robert E. Wald, Dec. 4. 2020 [ECF No. 43-1] ("Wald Dec. 2020 Decl.") ¶¶ 1–3. Wald also obtained Swick's occupational health file from Debra Davis, the FOIA Officer at FBCH. Id. ¶ 4. When considering this evidence previously, the Court concluded that "the Army appear[ed] to have satisfied its FOIA obligations with respect to Swick's personnel records." Order, Jan. 25, 2021 [ECF No. 45] ("Jan. 2021 Order") at 2.

In that same Order, however, the Court also expressed doubt about its prior grant of summary judgment to the Army regarding Swick's psychiatric report. Jan. 2021 Order at 2. Davis had previously filed a declaration swearing that she had searched Swick's medical records repeatedly but failed to locate a psychiatric evaluation. Decl. of Debbie Davis, July 19, 2020 [ECF No. 32-7] ¶ 6. Davis also explained that FBCH did not search other records for the psychiatric evaluation because the evaluation would not have been labeled as something other than a medical

3

record. Id. ¶¶ 7–8. An encounter note within Swick's occupational health file, however, indicated that FBCH did classify Swick's psychiatric evaluation as something other than a medical record. Jan. 2021 Order at 2–3. The Court accordingly ordered the Army to show cause why the Court should not reconsider its prior grant of summary judgment and to provide supplemental submissions detailing the search for the psychiatric evaluation report. Id. at 6–7.

The Army responded by informing the Court that it sent Swick her psychiatric evaluation report on February 21, 2021. Resp. to Order [ECF No. 46] at 1. The Army obtained this report after Wald contacted the Assistant General Counsel to the Defense Counterintelligence and Security Agency and learned that Swick's psychiatric report was maintained with U.S. Army Intelligence and Security Command ("INSCOM"). Decl. of Major Robert E. Wald, Feb. 22, 2021 [ECF No. 46-1] ¶¶ 7–8. Wald then contacted an official at INSCOM to retrieve the psychiatric report and confirmed that the report he received was the complete record in INSCOM's possession regarding Swick. Id. ¶¶ 9–10.

The parties subsequently filed a joint status report "identif[ying] one remaining issue to address"—the psychiatric report the Army produced omitted test results from Swick's evaluation. Joint Status Report, Mar. 15, 2021 [ECF No. 47] ¶ 9. The Army then contacted the Director of FBCH's Behavioral Health Department and learned that Swick underwent a computer test called the Millon Clinical Multiaxial Inventory-III ("MCMI-III") test. Joint Status Report, Apr. 14, 2021 [ECF No. 50] ¶ 10. According to the parties' April joint status report, "[t]he data generated by this test on the computer does not become a part of the medical record [and instead] is analyzed by the clinician performing the psychiatric evaluation but not transcribed into or included in the medical record." Id.

The Army nevertheless searched for the results from Swick's MCMI-III test but did not locate them. See Swick's Statement of Undisputed Facts ¶¶ 37–38. The Army has filed two declarations detailing its searches for these results. See generally Decl. of Terrance Branch [ECF No. 57-2]; Decl. of Dr. Dulce Benavides [ECF No. 57-3]. The first declaration—from Terrance Branch, Chief Information Officer at FBCH—states that there are three computers used for psychological testing at FBCH, none of which are connected to the hospital's network. Decl. of Terrance Branch ¶ 3. Because the computers are not on the network, the only place they can store data is on their hard drives. Id. ¶ 4. Only one of the computers had accessible data that could have contained Swick's test results, and a search of that computer's data for Swick's name, date of appointment, date of birth, and provider's name did not produce any results. Id. ¶¶ 6–8. The second declaration—from Dr. Dulce Benavides, Licensed Clinical Psychologist in the Behavioral Health Department at FBCH—corroborates the Army's assertion that the raw data from psychological tests does not become part of the patient's medical record. Decl. of Dr. Dulce Benavides ¶ 2. Benavides' declaration also states that no data has ever been deleted from the computers used for psychological testing and that these computers have never been connected to the network and have no external data back-up. Id. ¶¶ 4, 7. Finally, Benavides reviewed Swick's record and stated that there is no indication she underwent any testing besides the MCMI-III test as part of her psychological evaluation. Id. ¶ 8.

The Army moved for summary judgment a third time on September 27, 2021. See generally Army's Mot. The Army claims that summary judgment is warranted because it has produced Swick's personnel file and psychiatric evaluation report in their entirety. Mem. of P. & A. in Supp. of Army's Mot. [ECF No. 57-1] ("Mem. in Supp. of Army's Mot.") at 1. The Army also argues that the results of Swick's MCMI-III test are not part of her psychiatric evaluation

5

report and are therefore beyond the scope of Swick's FOIA request. Id. Regardless, even if the test results were within the scope of Swick's FOIA request, the Army claims its search for those results was sufficient to satisfy its FOIA obligations. Id.

The Court received Swick's cross-motion for summary judgment on November 22, 2021. See generally Swick's Cross-Mot.[1] Swick claims that "a medical certificate stemming from [an] occupational health/fitness exam completed October 4, 2012" is missing from the set of personnel records she received. Mem. of P. & A. in Supp. of Swick's Cross-Mot. [ECF No. 60-1] ("Mem. in Supp. of Swick's Cross-Mot.") at 11. Swick also disputes that the results of her MCMI-III test are beyond the scope of her FOIA request, id. at 12–13, and that the Army's search for these test results was adequate, id. at 16–17.

The Army filed its opposition to Swick's cross-motion on December 9, 2021, see generally Def.'s Opp'n to Swick's Cross-Mot. [ECF No. 61] ("Army's Opp'n to Swick's Cross-Mot."), and the Court received Swick's reply on January 4, 2022, see generally Pl.'s Opp'n to Army's Mot. [ECF No. 63] ("Swick's Reply"). The two motions are now fully briefed and ripe for decision.

## **Legal Standards**

FOIA requires federal agencies to release properly requested records unless an exemption applies. See Milner v. Dep't of the Navy, 562 U.S. 562, 564 (2011). "FOIA cases typically and appropriately are decided on motions for summary judgment." Defs. of Wildlife v. U.S. Border Patrol, 623 F. Supp. 2d 83, 87 (D.D.C. 2009). Summary judgment is appropriate when the

---

[1] Swick did not file any opposition to the Army's summary judgment motion, but the Court will exercise its discretion to treat Swick's cross-motion for summary judgment as both an independent motion and opposition. See Torres v. Oakland Scavenger Co., 487 U.S. 312, 316–17 (1988) ("[I]f a litigant files papers in a fashion that is technically at variance with the letter of a procedural rule, a court may nonetheless find that the litigant has complied with the rule if the litigant's action is the functional equivalent of what the rule requires."); see also Wye Oak Tech., Inc. v. Republic of Iraq, Civ. No. 1:10-cv-01182 (RCL), 2018 WL 5983385, at *2–3 (D.D.C. Nov. 14, 2018) (treating untimely cross-motion for summary judgment as opposition to summary judgment motion).

pleadings and evidence demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The relief a court can order in a FOIA case is limited. "FOIA is only directed at requiring agencies to disclose those 'agency records' for which they have chosen to retain possession or control." Canning v. U.S. Dep't of Def., 499 F. Supp. 2d 14, 23 (D.D.C. 2007) (quoting Kissinger v. Reps. Comm. for Freedom of the Press, 445 U.S. 136, 151–52 (1980)). For that reason, FOIA "only authorizes a court 'to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld.'" Harvey v. Lynch, 123 F. Supp. 3d 3, 7 (D.D.C. 2015) (quoting 5 U.S.C. § 552(a)(4)(B)). "FOIA does not impose a document retention requirement on agencies," Landmark Legal Found. v. EPA, 272 F. Supp. 2d 59, 66 (D.D.C. 2003); accord Canning, 499 F. Supp. 2d at 23–24, and "[e]ven where the Government was obligated to retain a document and failed to do so, that failure would create neither responsibility under FOIA to reconstruct those documents nor liability for the lapse," Canning, 499 F. Supp. 2d at 24 (alteration in original) (quoting Piper v. U.S. Dep't of Just., 294 F. Supp. 2d 16, 22 (D.D.C. 2003)). Accordingly, "[o]nce the records are produced the substance of the controversy disappears and becomes moot since the disclosure which the suit seeks has already been made." Perry v. Block, 684 F.2d 121, 125 (D.C. Cir. 1982) (per curiam) (alteration in original) (quoting Crooker v. U.S. State Dep't, 628 F.2d 9, 10 (D.C. Cir. 1980) (per curiam)).

If a responding agency cannot show that it has turned over all requested nonexempt material, the agency "must show beyond material doubt . . . that it has conducted a search reasonably calculated to uncover all relevant documents." Morley v. CIA, 508 F.3d 1108, 1114 (D.C. Cir. 2007) (quoting Weisberg v. U.S. Dep't of Just., 705 F.2d 1344, 1351 (D.C. Cir. 1983)). "The question is not 'whether there might exist any other documents possibly responsive to the

request, but rather whether the search for those documents was adequate.'" Steinberg v. U.S. Dep't of Just., 23 F.3d 548, 551 (D.C. Cir. 1994) (quoting Weisberg v. U.S. Dep't of Just., 745 F.2d 1476, 1485 (D.C. Cir. 1984)); accord Iturralde v. Comptroller of Currency, 315 F.3d 311, 315 (D.C. Cir. 2003) ("[T]he failure of an agency to turn up one specific document in its search does not alone render a search inadequate."). "The court applies a 'reasonableness' test to determine the 'adequacy' of a search methodology, consistent with congressional intent tilting the scale in favor of disclosure." Morley, 508 F.3d at 1114 (quoting Campbell v. U.S. Dep't of Just., 164 F.3d 20, 27 (D.C. Cir. 1998)).

"It is the agency's burden to prove that it has complied with its obligations under FOIA." Democracy Forward Found. v. Ctrs. for Medicare & Medicaid Servs., Civ. No. 18-635 (JDB), 2019 WL 6344935, at *1 (D.D.C. Nov. 27, 2019). An agency can meet this burden by submitting affidavits or declarations. See Morley, 508 F.3d at 1116; accord Mil. Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981). An agency's affidavits and declarations must be "relatively detailed and non-conclusory, and . . . submitted in good faith." SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (alteration in original) (quoting Ground Saucer Watch, Inc. v. CIA, 692 F.2d 770, 771 (D.C. Cir. 1981) (per curiam)). "Agency affidavits are accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" Id. (quoting Ground Saucer Watch, Inc., 692 F.2d at 771).

## **Analysis**

The Court will first consider the Army's argument that its production of documents mooted Swick's FOIA claims. The Court will then decide whether the Army satisfied its FOIA obligations

by conducting reasonable searches for Swick's requested documents. Finally, the Court will examine Swick's remaining assertions.

I.  **The Army's Production of Documents Has Mooted Only Part of This Case**

The Army's first argument in support of its summary judgment motion is that this case is moot because the Army has complied with both of Swick's FOIA requests. Mem. in Supp. of Army's Mot. at 7–8. The production of requested, nonexempt documents can moot a FOIA case. Perry, 684 F.2d at 125 ("[I]f we are convinced that [the government] ha[s], however belatedly, released all nonexempt material, we have no further judicial function to perform under the FOIA."). But the production must be total; partial production will not suffice. Nw. Univ. v. USDA, 403 F. Supp. 2d 83, 86 (D.D.C. 2005) (noting that a court "retains jurisdiction of a FOIA case if it is not convinced that the agency has released all nonexempt material"); accord Fraternal Ord. of Police, Metro. Lab. Comm. v. Dist. of Columbia, 82 A.3d 803, 816–17 (D.C. 2014). For the reasons explained below, while the Court agrees that the Army's production has mooted Swick's request for her personnel records, the Court does not reach this conclusion regarding Swick's request for her psychiatric report.

First, regarding Swick's request for "any and all documents in [her] OPM personnel file [or that are being maintained separately] containing [her] name, social security number, date of birth," Exs. to Compl. at 14, it is uncontested that the Army has sent Swick over 200 pages of personnel records, see Swick's Statement of Undisputed Facts ¶ 26. These records include Swick's official personnel folder, employee medical folder, and occupational health file. See id.; Wald Dec. 2020 Decl. ¶¶ 2–4. When considering this production previously, the Court noted that "Swick has not identified, and the Court is not aware of, any other types of personnel records that exist for a former federal employee like Swick." Jan. 2021 Order at 2.

Nevertheless, Swick disputes that the Army has produced her personnel records "in their entirety." Mem. in Supp. of Swick's Cross-Mot. at 11–12 (citation omitted). Swick claims that the Army's production is missing "a medical certificate stemming from [an] occupational health/fitness exam [she] completed October 4, 2012." Id. at 11. In other circumstances, such an allegation might preclude a finding of mootness. See Brustein & Manasevit, PLLC v. U.S. Dep't of Educ., 30 F. Supp. 3d 1, 7 (D.D.C. 2013) ("Given Plaintiff's insistence that additional responsive documents must exist . . . Plaintiff has a cognizable interest in having this Court determine whether the Defendant's search for records was adequate."). In this case, however, Swick's assertion that the Army's production is missing a medical certificate is more for posterity's sake than it is substantive. Swick explicitly states that she "is not attempting to widen [the Army's] search" for records responsive to her FOIA request. Mem. in Supp. of Swick's Cross-Mot. at 12. Instead, she appears to merely want it noted for the record that the Army's production did not include this document. See id. Regardless of whether this omission exists, because Swick is otherwise satisfied with the Army's production and "is not attempting to widen [the Army's] search," id., the litigation surrounding Swick's request for her personnel records is now moot, see Perry, 684 F.2d at 125.

The Court does not reach the same conclusion regarding Swick's request for her "[p]sychiatric [e]xamination [r]eport." Exs. to Compl. at 1. It is undisputed that the Army has not turned over the data from Swick's MCMI-III test. See Mem. in Supp. of Army's Mot. at 8–9. The Army argues, however, that this data is beyond the scope of Swick's FOIA request, id. 9–10. Acceptance of this argument could moot Swick's claim regarding her request for her psychiatric report since the non-production of this data is the "one remaining issue" associated with the request. Swick's Statement of Undisputed Facts ¶ 36.

10

But the Court has doubts about whether Swick's request for her "[p]sychiatric [e]xamination [r]eport" is too narrow to cover the data from her MCMI-III test. Exs. to Compl. at 1. The data is certainly related to Swick's psychiatric examination, and "an agency 'has a duty to construe a FOIA request liberally.'" Inst. for Just. v. IRS, 941 F.3d 567, 572 (D.C. Cir. 2019) (quoting Nation Mag., Wash. Bureau v. U.S. Customs Serv., 71 F.3d 885, 890 (D.C. Cir. 1995)). At the same time, however, the Army has submitted evidence that the data is not considered part of Swick's medical record, e.g., Decl. of Dr. Dulce Benavides ¶ 2, and an "agency is not obligated to rewrite the request to ask for more than the requester did," Canning v. U.S. Dep't of State, 134 F. Supp. 3d 490, 517 (D.D.C. 2015); see also Am. Chemistry Council, Inc. v. U.S. Dep't of Health & Hum. Servs., 922 F. Supp. 2d 56, 62–63 (D.D.C. 2013) (concluding that a plaintiff's request for "records" did not reasonably describe a request for "research data" related to those records in part due to facts not applicable here). Ultimately, the Court need not resolve this issue because, as explained below, even if Swick's FOIA request does encompass her MCMI-III data, the Army satisfied its FOIA obligations by conducting a reasonable search for this information.

**II.     The Army Satisfied Its FOIA Obligations Regarding Swick's Psychiatric Report**

"To win summary judgment on the adequacy of a search, the agency must demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" Nation Mag., 71 F.3d at 890 (quoting Truitt v. Dep't of State, 897 F.2d 540, 542 (D.C. Cir. 1990)). "The agency must make 'a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested.'" Id. (quoting Oglesby v. U.S. Dep't of Army, 920 F.2d 57, 68 (D.C. Cir. 1990)). The Court is satisfied that the Army has done so here.

As an initial matter, the only unproduced record that Swick claims she is entitled to is the data from her MCMI-III test. See Swick's Statement of Undisputed Facts ¶ 36; see also Decl. of

11

Dr. Dulce Benavides ¶ 8 (noting Benavides' conclusion that Swick did not take any other test besides the MCMI-III). The Army's declarations demonstrate Swick's data could have been stored on only three, or possibly even two, computers. See Decl. of Dr. Dulce Benavides ¶ 3; Decl. of Terrance Branch ¶ 3. The Army's declarations also contain sworn statements, made under threat of perjury, that these computers have never been connected to the network and have no external data back-up, meaning Swick's data could be located only on these computers' hard drives. Decl. of Dr. Dulce Benavides ¶ 4; Decl. of Terrance Branch ¶ 4. Only one of these three computers contained records that could have contained Swick's data, Decl. of Terrance Branch ¶¶ 6–8, and the Army searched that computer for Swick's name, date of birth, date of appointment, and provider's name, id. at ¶ 6. These extensive steps satisfy the Army's obligation to "make 'a good faith effort [to locate Swick's records] using methods which can be reasonably expected to" succeed. Nation Mag., 71 F.3d at 890 (quoting Oglesby, 920 F.2d at 68).

Swick makes two main arguments in opposition to this conclusion, neither of which is persuasive. She first appears to suggest that the Army's failure to locate her record indicates that the Army's search was inadequate. Swick's Reply at 6. But "the adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." Iturralde, 315 F.3d at 315. Swick never challenges the appropriateness of the Army's methods or suggests alternative methods that could have been successful. And it is the Court's conclusion that the Army's methods were sufficient.

Second, Swick argues that the Army's declarations are not sufficiently detailed.[2] Swick's Reply at 3–4. An agency's supporting declarations and explanation of its searches must be "relatively detailed and non-conclusory." SafeCard Servs., Inc., 926 F.2d at 1200 (quoting Ground Saucer Watch, Inc., 692 F.2d at 771). Swick claims the Army failed to meet this standard because it never "explain[ed] specifically what method/technical method was used to" conclude that no data has been deleted from the FBCH's computers. Swick's Reply at 3. But whether data has been deleted from the pertinent computers is irrelevant to the question before the Court—whether the Army has conducted a reasonable search for Swick's records.[3] See Iturralde, 315 F.3d at 315 (noting that a search's reasonableness is judged by its process instead of results because "[a]fter all, particular documents may have been accidentally lost or destroyed").

Swick also makes the conclusory claim that the Army "only says that [her] data no longer exist[s], without technical, explanative declaration as [to] how it arrived at that conclusion." Swick's Reply at 4. But the Army submitted two detailed declarations summarizing the reasons for its conclusion that Swick's data must be on one of three computers and its failed attempts to locate Swick's data from those computers' hard drives. See generally Decl. of Dr. Dulce Benavides; Decl. of Terrance Branch. Each of these declarations spans multiple pages and contains enough information about the Army's process to be "relatively detailed and non-conclusory." SafeCard Servs., Inc., 926 F.2d at 1200 (quoting Ground Saucer Watch, Inc., 692 F.2d at 771).

---

[2] Swick makes this argument for the first time in her reply, meaning the Court could treat the argument as waived and disregard it entirely. See Rollins Env't Servs. (NJ) Inc. v. EPA, 937 F.2d 649, 652 n.2 (D.C. Cir. 1991). But because Swick makes this argument in response to the Army's brief in opposition to her cross-motion, see Army's Opp'n to Swick's Cross-Mot. at 3, Swick is proceeding pro se, and the argument is meritless anyway, the Court will exercise its discretion to consider it now, see United States v. Merise, Crim. A. No. 06-42-1 (JDB), 2022 WL 355207, at *2 n.4 (D.D.C. Feb. 7, 2022).

[3] The Court also notes that Swick has not produced any evidence suggesting that the Army intentionally deleted the data from her MCMI-III test in response to her FOIA request.

In sum, the Army has demonstrated, through detailed declarations, that it conducted extensive searches reasonably calculated to uncover Swick's MCMI-III data. Though the Army was unable to locate Swick's data, the Army has satisfied its FOIA obligations and is entitled to summary judgment.

### III. Swick's Remaining Assertions Are Unavailing

Swick makes two additional assertions that the Court will briefly address here. First, Swick states several times that her "psychiatric examination . . . was not conducted for a background security investigation." Mem. in Supp. of Swick's Cross-Mot. at 11. The Army challenges this claim's accuracy, Army's Opp'n to Swick's Cross-Mot. at 4, but, more importantly, the Army correctly notes that the reason for Swick's psychiatric evaluation "is not relevant to the adequacy of [the Army's] search, because [the Army] searched . . . all the locations reasonably expected to contain the requested record," id. at 4–5. Second, Swick urges the Court to recognize that the data from her MCMI-III test should be regarded as a medical record that the Army was obligated to preserve along with her psychiatric report. Mem. in Supp. of Swick's Cross-Mot. at 12–14. As the Court explained above, however, "FOIA does not impose a document retention requirement on agencies." Landmark Legal Found., 272 F. Supp. 2d at 66; accord Canning, 499 F. Supp. 2d at 23–24. Hence, the fact that Swick's data is no longer accessible does not preclude the Court from granting the Army summary judgment, and the Court will not opine on the accuracy of either of Swick's assertions in this FOIA litigation.

### Conclusion

For the foregoing reasons, the Court will grant the Army's motion for summary judgment in its entirety and deny Swick's cross-motion. Through her persistence, aided by this Court's Orders requiring more careful searches by the Army, Swick has obtained the records the Army

14

initially claimed were not available or did not exist.  But the Army has now finally fulfilled its obligations under FOIA and is entitled to summary judgment.  A separate Order will issue on this date.

/s/<br>JOHN D. BATES<br>United States District Judge

Dated:  March 15, 2022